SIMCHA BEST, an individual,

                               Plaintiff,

- versus -

BANK OF AMERICA, N.A., and DOES 1-100, inclusive,

                               Defendants.

MEMORANDUM AND ORDER

14-CV-6546 (JG)(LB)

APPEARANCES:

    SIMCHA BEST
        382 Crown Street
        Brooklyn, New York 11225
        *Plaintiff pro se*

    BRYAN CAVE LLP
        1290 Avenue of the Americas
        New York, New York 10104
    By:   Scott Harris Kaiser
            Suzanne Michelle Berger
        *Attorneys for Defendant Bank of America, N.A.*

JOHN GLEESON, United States District Judge:

        Plaintiff Simcha Best brings this *pro se* action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and state law claims of negligence, quasi-contract, "no contract," intentional infliction of emotional distress, "declaratory judgment," injunctive relief, wrongful foreclosure, and "unfair or deceptive act" arising out of his failure to repay a loan secured by a mortgage on property at 901 Westcott Street, Syracuse, New York (the "Property").

        Bank of America, N.A., ("BOA") now moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and for lack of subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1). For the reasons explained below, the motion to dismiss is granted.

## BACKGROUND

Along with its papers, BOA submitted an affidavit attaching the mortgage, note, assignment of mortgage, and other loan documents issued by BOA to Best. *See* ECF No. 13. I am permitted to consider these materials without converting this motion to dismiss into one for summary judgment because the documents are specifically referenced in, and are integral to, the complaint. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (internal quotations omitted)); *Diario El Pais, S.L. v. The Nielsen Co., (U.S.), Inc.*, No. 07-CV-11295 (HB), 2008 WL 4833012, at *3 (S.D.N.Y. Nov. 6, 2008) ("A plaintiff's careful avoidance of certain documents in its pleading does not make those documents any less integral to the complaint.").

The first straw in this rat's nest of litigation was laid on December 6, 2006, when Best obtained a $138,400 loan from America's Wholesale Lender, secured by a mortgage on the Property. *See* Declaration of Scott H. Kaiser ("Kaiser Decl."), Ex. 2. A note reflecting the loan was endorsed in blank by Countrywide Home Loans, Inc., d/b/a America's Wholesale Lender. *Id.* at 3. The mortgage was freely assignable, as acknowledged in the mortgage and the note, both of which were signed by Best. *See* Kaiser Decl., Ex. 2 ¶ 1 ("I understand that the Lender may transfer this Note."), Ex. 3 ¶ 20 ("The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times."). The mortgage also states that Mortgage Electronic Registration Systems, Inc. ("MERS"), as the beneficiary in a nominee capacity for the lender and the lender's successors and assigns, "has the right: to exercise any or all" rights of the

lender and "to take any action required" of the lender. Kaiser Decl., Ex. 3 at 3 ("Borrower's Transfer to Lender of Rights in the Property").

Best stopped making mortgage payments in April 2009. Compl. ¶ 121. MERS, as nominee for America's Wholesale Lender, assigned the mortgage to The Bank of New York Mellon, formerly known as The Bank of New York ("BNY Mellon"), on July 20, 2009.[1] Kaiser Decl., Ex. 4. About one week later, BNY Mellon commenced a foreclosure action against Best in the Supreme Court of the State of New York, County of Onondaga, to enforce its rights under the mortgage. *See* Kaiser Decl., Ex. 10. On or about September 3, 2009, Best filed an answer to the foreclosure complaint. *See* Kaiser Decl., Ex. 11. He asserted a single counterclaim against BNY Mellon alleging that it had "not acted in good faith after declaring [its] willingness to do a loan modification." *Id.* On October 7, 2010, the New York Supreme Court granted BNY Mellon's motion for a Final Judgment for Foreclosure and Sale. Kaiser Decl., Ex. 12. The record is devoid of any suggestion that Best appealed this judgment in state court.

On July 1, 2011, BOA became the servicer of Best's mortgage for BNY Mellon. Kaiser Decl., Ex. 8 (copy of notice sent by BOA to Best advising him that as of July 1, 2011 BOA would be servicing his loan); Compl. ¶ 108. Upon the transfer of servicing of the mortgage loan to BOA, BOA informed Best that it may be considered a debt collector under the FDCPA. *See* Kaiser Decl., Ex. 8. In the following months, Best made two applications for a loan modification, on August 10, 2011 and October 18, 2011, in which he authorized BOA to "pull a current credit report." *See* Kaiser Decl., Ex. 9 at 3, 6. Almost three years later, on October 8, 2014, BOA issued a notice to Best again identifying BOA as the servicer of the mortgage for

---

[1] The written assignment of mortgage contained an effective date of April 1, 2009. Kaiser Decl., Ex. 4.

BNY Mellon. Kaiser Decl., Ex. 5.[2] On November 5, 2014, Best filed the instant complaint, which BOA now moves to dismiss.

DISCUSSION

As an initial matter, many of the allegations in the complaint appear to have been copied *verbatim* from a summary judgment brief filed in *Bradburn v. ReconTrust Company, N.A.*, in the Superior Court of the State of Washington in and for the County of Snohomish, and include references to parties and documents lacking any connection to this lawsuit. *See* Kaiser Decl., Ex. 13 (copy of summary judgment brief). Despite being granted an extension of time that provided him nearly three months to respond to BOA's motion, Best's opposition merely restates his complaint and only cursorily addresses BOA's arguments for dismissal. *See* Pl.'s Opp.; Def.'s Reply at 2-3.

A. *Legal Standard*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege facts sufficient to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012). In making this determination, a court should assume the truth of all well-pleaded allegations in the complaint "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations omitted)). In deciding a motion to dismiss, a court considers "the facts alleged in the pleadings, documents

---

[2] In a Chapter 13 voluntary bankruptcy petition filed on October 24, 2014 by Best in the United States Bankruptcy Court for the Eastern District of New York, Best identified BOA as an entity to which he owed money. Kaiser Decl. ¶ 7, Ex. 6. Best's bankruptcy case was dismissed on January 9, 2015, and his debt was not discharged. *See* Kaiser Decl., Ex. 7 (order dismissing bankruptcy case).

4

attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . . ." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). To ascertain whether subject matter jurisdiction exists in adjudicating a Rule 12(b)(1) motion, the court may refer to evidence outside the pleadings. *McKithen v. Brown*, 481 F.3d 89, 95-96 (2d Cir. 2007).

A court must construe a *pro se* litigant's pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and a *pro se* complaint should not be dismissed without granting the plaintiff leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999) (quotations and citations omitted). Nevertheless, "a *pro se* plaintiff must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." *Wilber v. U.S. Postal Serv.*, No. 10-CV-3346 (ARR), 2010 WL 3036754, at *1 (E.D.N.Y. Aug. 2, 2010) (quotations and citations omitted); *Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. 2005) ("Although we construe a *pro se* plaintiff's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." (internal citations omitted)).

B.      *Claim Preclusion, Collateral Estoppel, and the Rooker-Feldman Doctrine*

BOA argues that claim preclusion,[3] collateral estoppel, also referred to as issue preclusion, and the *Rooker-Feldman* abstention doctrine require dismissal of the complaint.

---

[3] In its papers, BOA uses the term *res judicata* interchangeably with claim preclusion. As the Second Circuit has noted, the doctrine of *res judicata* embraces two concepts: issue preclusion and claim preclusion. *See Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985). Issue preclusion, often called collateral estoppel, "refers to the preclusive effect of a judgment that prevents a party from litigating a second time an issue of fact or law that has once been decided." *Id.* Claim preclusion, on the other hand, requires that a judgment rendered by a court of competent jurisdiction will be "treated thereafter as the full measure of relief to be accorded between the same parties on the same cause of action." *Id.* (quotations and alterations omitted). "Claim preclusion is often

5

Since the prior foreclosure decision was rendered by a New York state court, New York's claim preclusion and collateral estoppel doctrines govern the analysis. *See Faraday v. Blanchette*, 596 F. Supp. 2d 508, 514 (D. Conn. 2009) (citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).

Under New York law, claim preclusion gives "binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein." *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970) (internal quotations omitted). Since BOA was not a party to the state court foreclosure proceedings, the applicability of claim preclusion depends on whether BOA was in privity with BNY Mellon, the plaintiff mortgagor who obtained the judgment. Courts have grappled with the relatively new question of whether a mortgage servicer is in privity with the owner of a mortgage for purposes of claim preclusion. *Compare Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) (mortgage servicer was in privity with foreclosure plaintiff because its interests were represented) *with Dolan v. Select Portfolio Servicing, Inc.*, No. 13-CV-1552 (PKC), 2014 WL 4662247, at *6 (E.D.N.Y. Sept. 18, 2014) (mortgage servicer's interests were not represented by mortgage holder in prior state court foreclosure action). On balance, district courts generally have found there to be privity between a mortgage servicer and the owner of mortgage, albeit under varying factual scenarios and state law definitions of privity. *See Duke v. Nationstar Mortg., L.L.C.*, 893 F. Supp. 2d 1238, 1247-48 (N.D. Ala. 2012) (citing cases).

However, I need not reach this issue because I conclude that the separate doctrine of collateral estoppel, sometimes referred to as issue preclusion, as well the *Rooker-Feldman*

---

referred to by the name of the broader concept of which it is apart, *i.e.*, *res judicata*." *Deutsch v. Integrated Barter Int'l, Inc.*, 700 F. Supp. 194, 196 (S.D.N.Y. 1988). I will use *res judicata* here to refer to the broader concept that encompasses both issue and claim preclusion.

doctrine, require dismissal of Best's claims. Unlike claim preclusion, the party invoking collateral estoppel under New York law need not have been in privity with a litigant in the prior action. *See Schwartz v. Public Adm'r of Bronx County*, 24 N.Y.2d 65, 71 (1969); *Marinelli Assocs. v. Helmsley-Noyes Co.*, 705 N.Y.S.2d 571, 576 (1st Dep't 2000) (finding that the "fundamental gravamen of the wrong" was precisely the same as the wrong in the prior action and therefore the claims against defendant were barred even though defendant was not a party to the prior action). Similarly, the *Rooker-Feldman* doctrine does not require that the federal-court defendant have been a party in the prior state court proceeding. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); Dustin E. Buehler, *Jurisdiction, Abstention, and Finality: Articulating A Unique Role for the* Rooker-Feldman *Doctrine*, 42 SETON HALL L. REV. 553, 598 (2012) (noting that *Rooker-Feldman* plays an important role in barring federal cases by aggrieved state-court litigants against state courts (and their judges), which would not be covered by claim preclusion).

   a.  *Collateral Estoppel/Issue Preclusion*

Under New York law, "[c]ollateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity." *Buechel v. Bain*, 97 N.Y.2d 295, 303 (2001). The doctrine seeks to avoid the relitigation of a decided issue and the possibility of an inconsistent result. *Id.* For collateral estoppel to bar a claim, the court must find (1) that an identical issue was necessarily decided in the prior action and is decisive of the present action, and (2) that there was a full and fair opportunity to contest the decision now said to be controlling. *See id.* at 303-04; *Yeiser*, 535 F. Supp. 2d at 424-25. The party asserting collateral estoppel must demonstrate the identicality and decisiveness of the issue, while the opponent bears the burden of establishing the

absence of a full and fair opportunity to litigate the issue in a prior proceeding. *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 501 (1984). To determine whether the issue in the prior case was necessarily decided, the focus is on the rights, questions, or facts that underlie a judicial decision, not the legal theories underlying the complaint. *See Coveal v. Consumer Home Mortg., Inc.*, No. 04-CV-4755 (ILG), 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005) (quotations omitted).

In the foreclosure judgment, the New York Supreme Court specifically ordered, adjudged, and decreed that BNY Mellon was "entitled to judgment establishing the validity of [the] mortgage" and to recover $169,063.80 upon said mortgage. Kaiser Decl., Ex. 12 at 3. It also ordered, adjudged, and decreed that Best, as the defendant in that foreclosure action, be "forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in [the Property] and every part thereof." *Id.* at 6.

Best's claims for "declaratory judgment," injunctive relief, and wrongful foreclosure seek to relitigate these same issues – namely, the validity of the mortgage assignment to BNY Mellon and Best's ownership rights in the Property. *See* Compl. ¶¶ 120-40. Best had a full and fair opportunity to litigate these issues in the foreclosure proceedings, and indeed he filed an answer in the foreclosure proceeding and asserted a counterclaim. *See* Kaiser Decl., Ex. 11. Under these circumstances, the test for collateral estoppel has been met, and Best is barred from pursuing these claims again in this court. *See Done v. Wells Fargo Bank, N.A.*, No. 08-CV-3040 (JFB)(ETB), 2009 WL 2959619, at *5 (E.D.N.Y. Sept. 14, 2009) (collateral estoppel barred federal action arising out of a state foreclosure proceeding where plaintiff had "a full and fair opportunity to litigate" the issue of his default on his mortgage obligations "but chose not to do so by failing to appear in the foreclosure action"); *Chestnut v. Wells Fargo Bank, N.A.*, No. 10-CV-4244 (JS)(ARL), 2011 WL 838914, at *2 (E.D.N.Y. 2011) (collateral estoppel precluded

8

plaintiffs' claims in federal action alleging predatory lending where plaintiffs "permitted [mortgagee] to obtain summary judgment and a foreclosure judgment without opposition").

By the same token, Best's quasi-contract and "no contract" claims amount to an improper collateral attack on the state court judgment. Under a "quasi-contract" theory of liability, Best alleges that BOA should be required to return the loan payments that it collected for BNY Mellon because BNY Mellon was not a beneficiary under Best's note. *See* Compl. ¶ 97. Best also asserts a claim for "no contract," alleging in essence that BOA procured his participation in the mortgage contract by misrepresentations and non-disclosures, rendering the contract void *ab initio*. *See id.* ¶¶ 103-16.

Both of these claims fail as a matter of law because the New York Supreme Court determined that BNY Mellon was the beneficiary of an enforceable note, entering the Final Judgment for Foreclosure and Sale in BNY Mellon's favor. As such, Best is collaterally estopped from arguing these points in a subsequent case. Moreover, since the "no contract" claim sounds in fraud, it must be plead with particularity pursuant to Fed. R. of Civ. P. 9(b), a more stringent standard that the barebones, and apparently cut-and-pasted, allegations fail to satisfy.

  b. *The Rooker-Feldman Doctrine*

Even if these claims were not collaterally estopped, they would still be subject to dismissal under Rule 12(b)(1) by application of the *Rooker-Feldman* doctrine. "'Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions.'" *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock*, 422 F.3d at 85). Though the doctrine has been narrowed in recent years, district courts lack jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284.

There are four requirements for the application of the *Rooker-Feldman* doctrine: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by the state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been "rendered before the district court proceedings commenced." *Hoblock*, 422 F.3d at 85; *Exxon Mobil Corp.*, 544 U.S. at 284. "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Hoblock*, 422 F.3d at 85.

Best's claims for declaratory judgment, injunctive relief, wrongful foreclosure, quasi-contract, and "no contract" all rest upon the narrow ground that the doctrine is meant to occupy. The procedural first and fourth elements have been satisfied; the New York state court entered the Final Judgment for Foreclosure and Sale against Best arising out of his default on his mortgage loan in October 2010, more than four years before this suit was commenced. *See* Kaiser Decl., Ex. 12.

With respect to the second element, Best seeks to prevent injuries stemming directly from the Final Judgment for Foreclosure and Sale — *i.e.*, the determination that he is "forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in [the Property] and every part thereof" as well as the validity and enforceability of BNY Mellon's mortgage on the Property. *See* Kaiser Decl., Ex. 12 at 3, 6.

As to the third element, though couched in varying legal theories and causes of action, Best has essentially asked this Court to review and reject these rulings by the New York Supreme Court. For instance, Best's "declaratory judgment" cause of action seeks, *inter alia*, to

10

quiet title to the Property and to determine whether BOA has any interest in the Property. Compl. ¶¶ 127-29. The "injunctive relief" cause of action alleges that Best retains rights in the Property and that BOA has wrongfully threatened his quiet enjoyment and use of the Property. *Id.* ¶ 131. The cause of action entitled "wrongful foreclosure" directly challenges the propriety of the foreclosure proceedings. *Id.* ¶¶ 137-40. The quasi-contract and "no contract" claims assert that the mortgage was invalid or otherwise unenforceable, and that BOA was not the true beneficiary of Best's mortgage note. *Id.* ¶¶ 96-116.

For all of the above reasons, I find that I do not have subject matter jurisdiction to review the declaratory judgment, injunctive relief, wrongful foreclosure, quasi-contract, and "no contract" claims.[4] *See Swiatkowski v. Citibank*, 446 F. App'x 360, 361 (2d Cir. 2011) (holding *Rooker-Feldman* barred mortgagor's claim that depended upon the invalidity of a state court foreclosure judgment such that "a decision in [plaintiff's] favor would effectively amount to declaring the state court judgment fraudulently procured and thus void" (quotations omitted)).

C. *Remaining Claims*

Reading the *pro se* complaint liberally, there are several allegations that appear beyond the reach of both collateral estoppel and the *Rooker-Feldman* doctrine. Collateral estoppel does not apply because the causes of action concern alleged conduct separate and apart from the issues decided in the state court foreclosure judgment. Construed liberally, the claims are also beyond the scope of *Rooker-Feldman*, as they are independent of the prior action and neither complain of injury from nor seek review of the state court foreclosure judgment. *See Hoblock*, 422 F.3d at 86.

---

[4] These claims constitute the complaint's eighth, ninth, tenth, fifth, and sixth causes of action, respectively.

However, for the reasons stated below, these remaining allegations fail to plausibly allege a claim for relief under Rule 12(b)(6).

1. *FDCPA Violations*

Best's claims under the FDCPA are time-barred and refuted by documents incorporated into the complaint. Actions under the FDCPA are subject to a one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). While there is some question as to whether the FDCPA's statute of limitations begins to run upon the discovery of the facts constituting the statutory violation or the violation itself, *see generally Benzemann v. Citibank N.A.*, No. 12-CV-9145 (NRB), 2014 WL 2933140, at *6 (S.D.N.Y. June 27, 2014), the complaint does not plausibly allege *any* discovery or violation within the statute of limitations period. Indeed, the state court foreclosure action was commenced in July 2009 and a foreclosure judgment was obtained in October 2010. Best participated in that foreclosure proceeding and, by his own admission, stopped making mortgage payments in April 2009. *See* Compl. ¶ 121. Though the statute of limitations issue was plainly raised in BOA's motion, Best did not provide any counterargument for why this claim was not time-barred. The complaint's threadbare allegation that BOA violated the FDCPA "most recently from November 2013 until the present," without more, is insufficient to state a plausible claim to relief.[5] *See id.* ¶ 55.

---

[5] BOA argues in the alternative that Best has failed to allege that BOA is a debt collector as defined in the FDCPA. Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or directly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, this definition does not include "any person collecting or attempting to collect any debt owed or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." *See* 15 U.S.C. § 1692a(6)(F). It appears that BOA became the servicer of Best's mortgage in July 1, 2011, *see* Kaiser Decl., Ex. 8, around nine months after the New York Supreme Court granted a foreclosure judgment. Thus, at the pleading stage, I cannot dismiss on the ground that the complaint has not adequately pled that BOA is a debt collector.

2. *FCRA Violation and Negligence Claim*

Best further alleges that BOA, at some unspecified time on some unspecified date, obtained and made an inquiry on his credit report by "misrepresenting to the credit bureaus that [BOA] had a right to run [Best's] credit." Compl. ¶ 79. According to Best, "there was absolutely no reason for [BOA] to obtain [his] credit report." *Id.* ¶ 80.

The complaint offers no discernable factual support for these claims, and many of the allegations refute them. For instance, the complaint alleges, in a different part, that BOA was the servicer of the mortgage loan. *Id.* ¶ 108 ("Bank of America, N.A., acted only as a servicer of Plaintiff's loan."). A credit agency is authorized by law to provide a credit report to a person that "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A). Since BOA was the servicer of Best's mortgage, its request to obtain Best's credit report would be authorized by this statute. *See Daniels v. Comunity Lending*, No. 13-CV-488 (WQH)(JMA), 2014 WL 51275, at *6 (S.D. Cal. Jan. 6, 2014) (dismissing FCRA claim that conclusorily alleged servicer lacked a permissible purpose to obtain credit report). But that is not all. Best also gave written authorization to BOA to obtain his credit report on two separate occasions. Kaiser Decl., Ex. 9 at 3, 6. In light of the above, I find that these allegations fail to state a plausible claim for relief under the FCRA.[6]

Moreover, to the extent that the claims rest on the proposition that the assignment of the mortgage was invalid, and that BOA was thus not entitled to collect loan payments, *see*

---

[6] The discussion assumes without deciding that Best has a private right of action under the statute. Some courts have recognized a private right of action under the FCRA for willful or negligent non-compliance with Section 1681s-2(b), but only when the furnisher of the information received notice from the credit agency that the debt was disputed. *See, e.g.*, *Redhead v. Winston & Winston, P.C.*, No. 01-CV-11475 (DLC), 2002 WL 31106934, at *5 (S.D.N.Y. Sept. 20, 2002) (citing cases). The complaint does not allege that such notice was ever given.

Compl. ¶¶ 45-53, they are collaterally estopped by the New York Supreme Court's determination that the assignment was effective. *See, e.g.*, *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, No. 08-CV-4207 (JFB)(WDW), 2012 WL 1038804, at *8 (E.D.N.Y. Mar. 28, 2012) (dismissing FCRA claims premised on the purported non-ownership of a condominium on grounds of collateral estoppel).[7]

The negligence claim, though styled as a separate cause of action, coincides with the claim for FCRA violations and is similarly lacking in any factual basis that would render it plausible. *See* Compl. ¶¶ 89-90. Additionally, the negligence claim is subject to dismissal because a mortgage servicer owes no duty of care to a borrower, which is a necessary element of a negligence claim. *See Infanti v. Scharpf*, No. 06-CV-6552, 2012 WL 511568, at *8 (E.D.N.Y. Feb. 15, 2012) (stating that a duty of care is an element of a negligence claim). An arm's length business transaction, like the one at issue in this case, "cannot give rise to a duty of care." *Banco Indus. de Venez. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 512-13 (S.D.N.Y. 2012) (quotations omitted); *see also Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 236 (E.D.N.Y. 2013) ("It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties.").

---

[7] As part of his FDCPA claim, Best asserts that MERS lacked authority to assign the mortgage. Compl. ¶ 45. However, Best contractually agreed in both the mortgage and the note that the mortgage could be assigned. Kaiser Decl., Ex. 3 at ¶ 20, Ex. 2 at ¶ 1. The mortgage states that MERS "has the right: to exercise any or all" rights of the Lender and the Lender's successors and assigns. Kaiser Decl., Ex. 3 at 3 ("Borrower's Transfer to Lender of Rights in the Property"). Furthermore, the New York Court of Appeals has held that previous assignments of mortgages by MERS are valid. *See MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 99 (2006); *see also Bank of N.Y. Mellon Trust Co. NA v. Sachar*, 943 N.Y.S.2d 893 (1st Dep't 2012) (MERS "validly assigned the mortgage").

3.  *Intentional Infliction of Emotional Distress and "Unfair or Deceptive Act"*

Best also claims that BOA's actions amounted to an intentional infliction of emotional distress under New York law. In order to plead this claim, a plaintiff must plausibly allege "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). The "outrageousness element" is "most susceptible to determination as a matter of law." *Id.* Here, Best alleges that BOA "acted with malice, fraud and/or oppression, by attempting to take Plaintiff's property through foreclosure when they have no legal right to do so." Compl. ¶ 119. This allegation is legally deficient because, as previously discussed, the New York Supreme Court has already determined that BNY Mellon has a legal right to foreclose. As a result, the complaint fails to plausibly allege extreme and outrageous conduct on the part of BOA.

Lastly, Best's claim for "unfair or deceptive act" is ambiguous and does not identify under which consumer statute, if any, he is seeking relief. Accordingly, it fails to state a plausible claim for relief.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted. The Clerk is respectfully directed to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated: September 1, 2015
     Brooklyn, New York